IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :
                      :    CRIMINAL ACTION
         v.         :
                      :    NO. 04-192-02
ERIC HUMBERT             :

# MEMORANDUM

**SURRICK, J.**                                              **MARCH  31 , 2015**

Presently before the Court is Petitioner Eric Humbert's *pro se*[1] Motion Under 28 U.S.C.

§ 2255 (ECF No. 141-1), Petitioner's Motion For Reconsideration of the Court Order of

November 19, 2010 (ECF No. 143), and Petitioner's Motion For Leave To Supplement the

Section 2255 Motion (ECF No. 157).  For the following reasons, the Motions are granted in part

and denied in part.

## I.    BACKGROUND

### A.    Factual Background

During the summer of 2003, Petitioner, along with several co-defendants, committed

three bank robberies in Southeastern Pennsylvania.  On June 20, 2003, Petitioner and co-

defendant, Shannon Johnson, stole a silver minivan from a hotel parking lot in Philadelphia.

Petitioner and Johnson then drove to a Fleet Bank branch located at 250 East Lancaster Avenue

in Wynnewood, Pennsylvania.  Carrying what appeared to be a weapon, Petitioner entered the

lobby area of the bank and threatened patrons and bank employees.  Johnson attempted to access

---

[1] We subject *pro se* pleadings to a liberal review.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Supreme Court has held that a *pro se* complaint, "however inartfully pleaded," is to be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Higgs v. Att'y Gen. of the U.S.,* 655 F.3d 333, 339 (3d Cir. 2011).

the bank's vault.  Petitioner and Johnson stole $23,927 from the bank and $371 from a bank patron.  They then fled the scene.

Several weeks later, on July 11, 2003, after co-defendant Maynard Patterson provided Petitioner with a handgun, Petitioner and Johnson stole another minivan and drove with Patterson to a Panasia Bank branch located at 7400 Front Street in Cheltenham, Pennsylvania. After the bank had closed for business, Petitioner fired shots at the bank door and kicked in the glass.  Petitioner then entered the lobby while Johnson attempted to seize currency from the tellers' drawers.  Petitioner and Johnson left the premises without any money.

One week later, Petitioner and Johnson stole yet another minivan and drove with Patterson to a Citizens Bank branch, located at 2501 Welsh Road in Philadelphia.  Joseph Allen was the switch car driver.  Petitioner again entered the lobby, threatening patrons while holding two weapons.  Several bank tellers were assaulted as Petitioner and Johnson attempted to take money from the tellers' drawers.  Petitioner and Johnson fled with $11,756 in cash; however, one bag, containing $5,675 in cash, was retrieved outside the bank.

The evidence linking Petitioner to these bank robberies was overwhelming.  In addition to Patterson, Johnson, and Allen all testifying against Petitioner, one specific piece of evidence offered a definitive link between Petitioner and the Citizens Bank robbery.  DNA taken from a latex glove found near the Citizens Bank branch matched a sample provided by Petitioner.

Petitioner was indicted by a federal grand jury on July 13, 2004.  (*See* Superseding Indictment, ECF No. 23.)

### B.    Procedural History

On February 4, 2005, a jury convicted Petitioner on all counts of the Superseding Indictment.  The counts included:  conspiracy to commit armed bank robbery, in violation of 18

U.S.C. § 371 (Count One); bank robbery, in violation of 18 U.S.C. § 2113(a) (Count Two); two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Counts Three and Five); two counts of aiding and abetting the discharge of a firearm during a crime of violence and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) (Counts Four and Six); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Judgment 1-2, ECF No. 115.)  Petitioner was sentenced on August 2, 2005, to a term of imprisonment of 720 months, followed by five years of supervised release.  (*Id.* at 3, 5.) Petitioner was also ordered to make restitution to his victims.  (*Id*. at 6-7.)[2]

Petitioner appealed his conviction and sentence.[3]  On July 2, 2009, the Third Circuit affirmed Defendant's convictions.  *United States v. Humbert*, 336 F. App'x 132 (3d Cir. 2009). The Supreme Court denied Petitioner's request for a *writ of certiorari* on November 2, 2009. *Humbert v. United States*, 558 U.S. 1006 (2009).

Petitioner filed the instant Motion for a writ of habeas corpus on October 22, 2010.  (Pet., ECF No. 141-1.)  Petitioner requested an extension of time to supplement his Motion.  (ECF No. 141.)  We denied that request, but granted him leave to amend his Petition to expand the five issues raised in his original timely petition.  (ECF No. 142.)  Petitioner subsequently submitted a Memorandum of Law in support of these five claims.[4]  (Pet's Mem., ECF No. 144.)  On March

---

[2]  In another case in this District, *United States v. Humbert*, Crim. No. 04-506, Petitioner was convicted by a jury of;  conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; conspiracy to commit carjacking, in violation of 18 U.S.C. § 371; carjacking, in violation of 18 U.S.C. § 2119; and two counts of using and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  Petitioner was sentenced by the Honorable Berle M. Schiller to a total of 835 months of imprisonment, followed by five years of supervised release.

[3]  On appeal, the Third Circuit consolidated this case with the case before Judge Schiller.

22, 2011, the Government filed a response.  (Gov't's Resp., ECF No. 145.)  On June 30, 2011,

Petitioner submitted an affidavit alleging that trial counsel knew of, and was complicit in,

Government presentation of falsified DNA evidence in regard to the July 18, 2003 Citizens Bank

robbery.  (Pet'r Aff., ECF No. 150.)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the court to vacate, set aside

or correct a sentence "upon the ground that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under this provision is

generally available "to protect against a fundamental defect which inherently results in a

complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair

procedure."  *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

While the court may in its discretion hold an evidentiary hearing on a § 2255 petition,

*Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if the

"motion and the files and records conclusively show that the prisoner is entitled to no relief."  28

U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a

defendant must show that:  1) his or her attorney's performance was deficient, and 2) the

deficient performance prejudiced his or her defense.  *Strickland v. Washington*, 466 U.S. 668,

687 (1984).  To establish deficient representation, a defendant must show that counsel's

---

⁴   Petitioner's Memorandum was filed on January 7, 2011, eight days after the December 30, 2010 deadline imposed by this Order.  (ECF No. 142.)  Nevertheless, we deem the Memorandum to have been timely filed.

performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland,* 466 U.S. at 688).

To establish prejudice, a defendant must show that "counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id* at 694.  Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695.  Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcoming the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted).  While a defendant has the right to effective assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial.  *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002)  ("[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel.").

"To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." *Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1435 (3d Cir. 1996) (quoting *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993)). "Judicial scrutiny of counsel's performance must be highly deferential" as "there are countless ways to provide effective assistance in any given case."  *Strickland*, 466 U.S. at 689.

In the case of *Thomas v. Varner*, 428 F.3d 491, (3d Cir. 2005), the Third Circuit addressed how district courts should proceed in assessing whether an attorney's performance was constitutionally deficient under the first prong of *Strickland*.  The Court held, *inter alia*, that:

> [s]imilar to instances in which a court disposes of an ineffective assistance of counsel claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy . . . . Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness ground.

*Id.* at 501 n.10 (internal quotations and citations omitted).

## III.    DISCUSSION

Petitioner raises five claims alleging that his trial counsel was ineffective.  First, Petitioner argues that counsel failed to investigate the law and raise challenges related to DNA evidence used at trial.  (Pet'r Mem. 6.)  Second, Petitioner contends that counsel failed to properly object to the discussion of other crimes committed by Petitioner.  (*Id.* at 22.)  Third, Petitioner claims that counsel was ineffective for failing to file a motion to suppress evidence. (*Id.* at 27.)  Fourth, Petitioner argues that counsel was ineffective for not objecting to prosecutorial misconduct during trial.  (*Id.* at 32.)  Finally, Petitioner argues that counsel was ineffective for failing to object to the Career Offender sentencing enhancement applied to Petitioner.  (*Id.* at 36.)

### A.    Failure to Investigate DNA Evidence

Petitioner first claims ("Issue One") that counsel was constitutionally ineffective for failing "to investigate the law . . . in order to raise challenges as against the Government use of forensic DNA evidence or related documentations."  (Pet'r Mem. 6.)  Specifically, Petitioner argues that trial counsel failed to request information about the Government's intended use of

DNA evidence at trial and failed to file a motion challenging the admissibility of such evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  (*Id.* at 10.) Petitioner contends that counsel should have challenged both the chain of custody and the testing methods used in FBI labs examining the latex glove that Petitioner dropped at the Citizens Bank robbery.  (*Id.* at 14, 19.)  In addition, Petitioner argues that counsel was ineffective for failing to call an expert witness to testify about DNA testing procedures.  (*Id.* at 10.)

Petitioner's argument that counsel was ineffective for failing to file a *Daubert* motion is meritless.  The Philadelphia Police Department (PPD), which performed the testing on the latex glove and the samples taken from Petitioner, used a PCR/STR DNA test.  This is a common method of testing DNA samples.  Petitioner claims that counsel should have filed a *Daubert* motion to cast doubt on the validity of this testing method.  (*Id.* at 10.)  Such a motion would have been frivolous.  The Third Circuit has addressed this very issue and has ruled that the PCR/STR DNA test meets "the standards for reliability and admissibility set forth in [Federal Rule of Evidence] 702 and *Daubert*."  *United States v. Trala*, 386 F.3d 536, 541 (3d Cir. 2004), *vacated on other grounds Trala v. United States*, 546 U.S. 1086 (2006); *United States v. Grinnage*, 486 F. App'x 325, 329 (3d Cir. 2012); *United States v. Adams*, 189 F. App'x 120, 123 (3d Cir. 2006).  A motion to disqualify the DNA evidence based on the nature of the testing method would have failed.  Counsel was not required to file a meritless motion.  Since "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument," Petitioner's *Daubert* ineffectiveness claim and his argument that counsel should have challenged the validity of the DNA testing method is without merit.  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Petitioner's argument as to the chain of custody is similarly baseless.  Petitioner claims that the cotton swabs used to obtain DNA samples from the latex gloves were mishandled, either "through inadvertence or purposeful fraud," and that such mishandling is "enough to nullify forensic DNA test results by itself."  (Pet'r Mem. 17.)  Petitioner's claims consist solely of conjecture and conclusory statements.  There is simply no evidence to support Petitioner's claim of a break in the chain of custody.  The testimony clearly established a proper chain of custody for all of the evidence related to the DNA testing.  We cannot fault Petitioner's counsel for failing to file a motion which has no basis in reality.  The "prevailing professional norms" envisioned by *Strickland* do not require trial counsel to file frivolous and unsupported motions.

Finally, Petitioner claims that counsel was ineffective for failing to call an expert witness. Petitioner does not elaborate on what testimony a reliable expert witness might have provided to counter the testimony offered by the Government's expert witness.  The Government's expert testified with regard to the collection of samples and the methodology of the DNA testing.  He further testified as to the match between the DNA on the gloves and Petitioner's DNA, and gave the statistical probabilities.  Petitioner cannot credibly claim that an expert witness of his choosing would have offered a significantly different assessment of the situation.  Trial counsel was not obligated to call an expert witness simply because the Government did so.  We will not second-guess counsel's decisions that are "well within the range of professionally reasonable judgments."  *Strickland*, 466 U.S. at 699.  The decision not to call an expert witness clearly falls within that range.

We do not reach the second *Strickland* prong on any of these claims because  Petitioner has not satisfied the first prong by demonstrating that counsel's performance was deficient.

**B.      Failure to Object to Mention of "Other Crimes" Evidence**

Petitioner next argues ("Issue Two") that counsel was ineffective for failing to request a mistrial or cautionary instruction in response to allegedly prejudicial "other crimes" evidence elicited by the Government at trial.  (Pet'r Mem. 23.)  Petitioner claims that Sergeant Robert DiGregorio, a detective in Salem County, New Jersey, referred to the fact that he had conducted an investigation of Petitioner for an incident in May of 2003, and according to Petitioner, this mention of "other crimes" prejudiced Petitioner before the jury.  (*Id.* at 24.)  According to Petitioner, counsel's failure to object amounted to ineffective assistance of counsel.  (*Id.* at 25.)

DiGregorio's statement was brief and unspecific.  He did not mention the nature of the investigation, and did not mention "other crimes" as Petitioner suggests.  (Trial Tr. 70-71, Feb. 2, 2005.)  The Third Circuit described this as a "very brief exchange," and noted that "there is no indication that it affected the outcome of the trial."  *Humbert*, 336 F. App'x at 140.

We are satisfied that counsel's failure to move for a mistrial or for a cautionary instruction was not unreasonable.  Clearly, Petitioner is unable to show that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Had Petitioner's counsel moved for a mistrial, it would have simply highlighted the situation.  Sergeant DiGregorio's statement was relatively innocuous.  Furthermore, Petitioner cannot credibly demonstrate that a cautionary instruction, had Petitioner's counsel requested one, would have done anything but make the matter worse.

As noted above, Petitioner was convicted on the basis of overwhelming evidence linking him to the three bank robberies in Pennsylvania.  There is no reason to believe that a casual remark, of limited material value, by a detective in New Jersey, played any role in

convincing the jury of Petitioner's guilt.  Petitioner is simply unable to show that the

failure to request a mistrial or cautionary instruction prejudiced him in regard to the final

result.

### C.      Failure to File Motion to Suppress

Petitioner next claims that counsel was ineffective for failing to file a motion to suppress

DNA evidence under the Fourth Amendment.  (Pet'r Mem. 27, 31.)  Specifically, Petitioner

claims that the warrant was based on an affidavit that contained false statements.  (*Id*. at 27-28.)

Petitioner's claim of ineffectiveness finds no support in the record.  Counsel filed two

separate pre-trial motions seeking to suppress this evidence on Petitioner's behalf.   (Mot. *in*

*Limine*, ECF No. 78; Suppression Mot., ECF No. 79.)  This very issue was thoroughly litigated

in this Court and also on appeal, where the Third Circuit rejected the claim of a Fourth

Amendment violation.  *Humbert*, 336 F. App'x at 137 ("We find that the statements were not

reckless, and that even if they were excised there was still enough information in the affidavit to

support a probable cause finding.").

Petitioner's claim that the warrant contained false information, and thus amounted to a

Fourth Amendment violation, was thoroughly litigated and rejected by this Court and the Third

Circuit.  The attempt by Petitioner to re-litigate that which was already decided is not the proper

subject of a petition under § 2255.  *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir.

1993), *rehearing denied* (3d Cir. 1993) (en banc) ("Many cases have held that Section 2255

generally 'may not be employed to relitigate questions which were raised and considered on

direct appeal.  We refuse to permit such relitigation here.") (citing *Barton v. United States*, 791

F.2d 265, 267 (2d Cir. 1986)); *see also Stone v. Powell*, 428 U.S. 465, 489-95 (1976); *United*

*States v. Brown*, No. 99-cr-730, No. 04-cv-4121, 2005 WL 1532538, at *5 (E.D. Pa. Jun. 28, 2005).

Notwithstanding Petitioner's improper attempt to re-litigate this issue, Petitioner cannot establish ineffectiveness under *Strickland*. "A petitioner claiming that he was denied effective assistance of counsel with regard to a Fourth Amendment claim must prove far more than the mere existence of a meritorious Fourth Amendment claim." *Strube v. Untied States*, 206 F. Supp. 2d 677, 682 (E.D. Pa. 2002). In light of the Third Circuit's rejection of Petitioner's instant Fourth Amendment claim, Petitioner cannot satisfy that which is required to demonstrate ineffectiveness of counsel. Consequently, Petitioner's third claim is denied.

### D.  Failure to Object to Prosecutorial Vouching

Petitioner next argues that the Assistant United States Attorney committed prosecutorial misconduct by vouching for the reliability of DNA evidence and the fact that the robbed banks were insured by the Federal Deposit Insurance Corporation (FDIC). (Pet'r Mem. 32.) According to Petitioner, counsel was ineffective for failing to object to this allegedly improper conduct, which amounted to "conceding the case." (*Id*. at 33.)

"[T]he prosecution may ask the jury to draw permissible inferences from anything that appears in the record." *United States v. Sullivan*, 803 F.2d 87, 91 (3d Cir. 1986) (internal quotation marks and citation omitted). Indeed, proscribed prosecutorial vouching has only occurred if the prosecutor "assure[d] the jury that the testimony of a Government witness is credible[, and] this assurance [was] based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006).

The FDIC comment did not constitute vouching.  This statement, which merely stated the Government's contention that the three robbed banks were FDIC-insured, was consistent with the evidence presented that the robbed banks were, in fact, FDIC-insured.  The Third Circuit, on Petitioner's appeal, found that "the evidence was sufficient to show that all three banks . . . were insured by the FDIC."  *Humbert*, 336 F. App'x at 135.  Based on the evidence presented, the prosecutor was not acting improperly by stating that the Government had met its burden as to one of the elements of the bank robbery statute, 18 U.S.C. § 2113.

The statement that the DNA evidence was trustworthy was similarly not improper vouching, because it was based upon the established evidentiary record.  Kevin L. Knox, a scientist at the DNA laboratory where Petitioner's DNA and the DNA found in the latex glove were tested and compared, testified as to the probative value and reliability of the DNA evidence.  (*See* Feb. 3, 2005 Trial Tr. 206-08.)  The prosecutor's statement was adequately supported by the record.  Furthermore, the prosecutor could not be accused of vouching for a witness' credibility.  Her description of the DNA evidence as a "silent witness," does not create a basis for objecting to prosecutorial vouching.  The prosecutor was not assuring the jury of the credibility of a witness' testimony.  She was simply pointing out that the DNA was reliable and was not affected by the human foibles of memory and fear.  Her comments about the DNA evidence did not constitute prosecutorial vouching.

If counsel objected to either statement, the objection would have been overruled, because the prosecutor's statements were supported by the record.  As we have noted, counsel is not required to raise meritless objections in order to be considered constitutionally competent.  Counsel's performance did not fall below the objective standards of reasonableness required by

the Sixth Amendment.  Since counsel's performance was not deficient, Petitioner cannot

establish a violation under *Strickland*, and his claim must be denied.

### E.       Failure to Challenge Sentencing Enhancement

Petitioner's final argument is based upon the Court's determination that Petitioner's

criminal history conferred "Career Offender" status upon him, and the Court's determination that

this justified an enhancement under the United States Sentencing Guidelines.  (Pet'r Mem. 36-

37.)  Petitioner claims that several of his past convictions should have been consolidated into a

"single sentence," which he claims would have prevented him from being labeled as a Career

Offender.  Petitioner argues that counsel should have raised this issue with the goal of preventing

the Court from designating Petitioner as a Career Offender.  (*Id*. at 36.)

The Sentencing Guidelines define a defendant as a career offender if three criteria are

satisfied.  First, the defendant must have been at least eighteen years old at the time the

defendant committed the offense for which he is being sentenced.  Second, the instant offense

must be "a felony that is either a crime of violence or a controlled substance offense."  Third, the

defendant must have "at least two prior felony convictions of either a crime of violence or a

controlled substance offense."  United States Sentencing Commission, <u>Guidelines Manual</u>, §

4B1.1 (Nov. 2011).

"Federal Sentencing Guideline Amendment 709, which took effect in 2007, provided that

any prior sentences resulting from offenses contained in the same charging instrument or

imposed on the same day should be counted as a single sentence for the purpose of calculating a

defendant's criminal history category."  *United States v. Neff*, 598 F.3d 320, 322 (7th Cir. 2009);

*see also* United States Sentencing Commission, <u>Guidelines Manual</u>, § 4A1.2(a)(2) (2007).

However, Amendment 709 does not apply retroactively.  *United States v. Wood*, 526 F.3d 82, 88 (3d Cir. 2008); *United States v. Zemba*, 403 F. App'x 649, 650 (3d Cir. 2010).

Petitioner claims that counsel was ineffective for failing to raise Amendment 709 at sentencing.  (Pet'r Mem. 36.)  However, Petitioner was sentenced on August 2, 2005; Amendment 709 did not take effect until 2007.  Counsel cannot be held responsible for failing to raise an Amendment to the Sentencing Guidelines that did not exist at the time.  Petitioner's counsel did not challenge the Court's criminal history assessment under Amendment 709 because Amendment 709 had not been enacted.  Accordingly, counsel's performance cannot be considered ineffective under the Sixth Amendment.  We, therefore, deny Petitioner's fifth claim.

### F.    Certificate of Appealability

The Government requests an order that no certificate of appealability issue with regard to Defendant's Section 2255 claims. (Gov't Resp. 17.)  The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Circuit L.A.R. 22.2.  Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As discussed above, Defendant has raised no viable claims, and we do not believe that any reasonable jurist would disagree with our assessment.  Therefore, a certificate of appealability will not issue.

14

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's Section 2255 Motion is denied in full.  This Court finds no basis to hold an evidentiary hearing or issue a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**